**ALLSTATE INSURANCE COMPANY,
Petitioner,**

v.

**H. M. HUNT, Respondent.**

**No. B–2047.**

Supreme Court of Texas.

June 23, 1971.

Rehearing Denied July 14, 1971.

Tom Lorance, Houston, for petitioner.

W. Douglas Matthews, Houston, Richard D. Strahan, Baytown, for respondent.

GREENHILL, Justice.

This is an uninsured motorist case in which the insured has recovered below against his insurance company and the uninsured motorist. Allstate is the only Petitioner here. The case will be developed below; but to show the main problem

presented, the facts may be summarized as follows. The insured motorist, Hunt, was struck by Rose, an uninsured motorist. Allstate Insurance Company was required under its policy with Hunt to pay Hunt all sums which Hunt "shall be legally entitled to recover as damages" from the uninsured motorist, Rose, up to the policy limits. Also under the policy, Allstate was bound to furnish Hunt with counsel in any suit against Hunt; and Hunt was required to furnish, and did furnish, Allstate with information concerning the accident and the extent of his injuries.

After long and unfruitful arbitration between Hunt and Allstate, Hunt sued Rose. Allstate gave Hunt a letter, set out below, in which it consented to the suit and agreed, without qualification, to be bound by its outcome. Hunt then made Allstate a party defendant. Allstate moved that its identity be withheld from the jury or for a severance. In the motion, Allstate stipulated that it had agreed to be bound as to liability and damages by the outcome of Hunt v. Rose. The trial court granted Allstate a separate trial. Thus there were two trials: a tort suit against Rose and a contract action against Allstate.

Rose, the uninsured, had his own counsel. Nevertheless, when Hunt v. Rose came on for trial, counsel for Allstate, with the consent of Rose, came in as leading counsel for Rose. The trial court, having granted Allstate a separate trial, refused to let Allstate's counsel participate in Rose's separate trial and prohibited the use of Allstate's files containing information it had gotten from Hunt. Allstate then attempted to withdraw its consent to be bound. The trial court stood firm, and counsel for Allstate left the courtroom with Allstate's files; and the separate trial of Hunt v. Rose proceeded. Hunt recovered a judgment for $19,106.20 against Rose, an amount in excess of the uninsured motorist policy limits. In the separate trial against Allstate, the court held that it was undisputed that Rose was uninsured and that the liability of Rose had

been established; and Hunt recovered from Allstate $10,000, the policy limits for uninsured motorist. Rose did not appeal, but Allstate did. The court of civil appeals affirmed. 450 S.W.2d 668.

A basic issue here presented is whether a co-defendant insurance company shall be permitted to defend an uninsured motorist against its own insured in an attempt to prevent or limit recovery by its insured after the insurance company has requested and been granted a separate trial. Allstate argues that notwithstanding the separate trial, it should also have been able, without the jury's knowing it was in the case, to defend the uninsured motorist because it has given consent to the suit and would be bound by the determination of liability and amount of damages in the suit between Hunt and Rose; or it should have been permitted to withdraw its consent to the suit and its agreement to be bound if it were not permitted to defend the uninsured motorist.

The opinion of the court of civil appeals is an able one. The writ was granted because this is a case of first impression, and there was division among us as to the correctness of the court of civil appeals' opinion. This court now agrees with that opinion, except as modified herein, and the judgment entered. That opinion sets out the divergence of holdings among the states which have entered this field and cites some of the various writings on the subject. That material need not be repeated here. It will be helpful, however, to look at the conflict of interest present in this case. The primary duty of the insurance company is to its insured. If suit is brought against him, the company is to defend him to the best of its ability. Having this duty, it has the right to call on its insured for cooperation and the disclosure of information. The insured is required to "bare his soul" to the company with regard to the accident and his own injuries.

When the insured is struck by an uninsured motorist, it is to the financial advan-

tage of the company that it not be required to pay to its insured the damages alleged to be caused by the uninsured motorist. The company, of course, is justified in being careful in paying out its funds and in protecting itself. So the company examines closely the rights of both parties. If it decides to defend the uninsured motorist (already having a file on its insured motorist), it then assumes a fiduciary capacity with the uninsured motorist and gets a file on him and his position. If the uninsured motorist should later decide to bring a cross-action against the insured motorist, the company would find itself under a duty to defend both antagonists. In such event, a finding of negligence and contributory negligence would get the insurance company home relatively free.

The record in this case shows that Allstate had developed a file on Hunt which we assume was a collection of information provided under contractual terms of the policy. This Allstate policy is bulging with requirements that the insured must cooperate with the company in such ways as submitting to physical examinations by Allstate's doctors, furnishing extensive information under oath, and being available at all times for the convenience of the insurance company. Although this record does not disclose what specific information the files include, the trial court has the discretion to say that such file creates a conflict. Allstate has not denied that the file contained confidential information and creates a conflict. Our conclusion is that it should be left to the discretion of the trial court to pass upon the disqualification or conflict of interest, with the burden being upon the insurance company to show no substantial conflict of interest. We hold that the trial court did not abuse its discretion in this case.

There may be other instances where the insured motorist is clearly at fault and the insurance company has not, in fact, obtained confidential information from its insured. The lack of substantial conflict of interest, and the right of the insurance company to protect itself, would weigh on the side of allowing it to participate in the trial on the side of the uninsured motorist.

■ We now turn to the problem as to whether Allstate should have been permitted to withdraw its consent and agreement to be bound by the outcome of Hunt v. Rose. Again we are of the opinion that this turns on the sound discretion of the trial judge; and under the circumstances, we find no abuse of discretion. It should be stated that we do not have before us a case in which the consent is withdrawn before any action or inaction has been taken with regard to it.

This record shows that Allstate's consent to be bound was not conditioned on its right to defend Rose. The trial judge inquired if there was a subsequent agreement between Allstate and Hunt that Allstate could defend Rose. The answer was "no." The policy does not provide that Allstate will have, as a condition to the giving of its consent, a right to defend the uninsured motorist. It was an unequivocal consent to be bound, and is, in effect, a waiver of the right to have the same issues determined again in separate trial. Stipulations that the result of one case will control another similar case will be upheld. Savage v. Dorn, 60 S.W.2d 312 (Tex.Civ.App.1933, writ refused).

Initially the company can protect itself from default judgments against the uninsured motorist and from insubstantial defense of the uninsured motorist by withholding its consent to the suit between its insured motorist and the uninsured motorist. Here, Hunt, the insured, and the company were engaged in arbitration proceedings until the statute of limitations was about to bar Hunt's suit against Rose. Then Hunt filed suit, and the company gave him the following letter,

"Please take this as the necessary written consent of Allstate Insurance Company under the policy that the results of the litigation of the tort ques-

tion, if any, and the amount of damages sustained by Mr. Hunt, if any, (subject to the applicable limits within the policy) shall be binding upon Allstate Insurance Company so that these matters will be taken as established with relation to any claim of Mr. Hunt under his uninsured motorist coverage with Allstate Insurance Company."

After receiving the above letter, Hunt made Allstate a party defendant. Allstate wanted its identity withheld as a defendant; and since the policy covers uninsured but not necessarily insolvent motorists, there is something to be said on behalf of the uninsured motorist who might not want to have an insurance company as a co-defendant.

As an alternative to the above motion that its identity be withheld, the company asked for a severance from the case with Rose, the uninsured motorist. Its motion for severance made to the trial judge seven months after Allstate was joined as a co-defendant stated in part,

"Allstate Insurance Company by a letter dated October 5, 1967, * * * gave its written consent * * * that the results of the litigation of the tort question, if any, and the amount of damages sustained by Mr. Hunt, if any, (subject to the applicable limits within the policy) shall be binding upon Allstate Insurance Company so that these matters will be taken as established with relation to any claim of Mr. Hunt under his uninsured motorist coverage with Allstate Insurance Company."

* * * * * *

"The plaintiff herein does not even allege that it has been determined that plaintiff is legally entitled to recover damages from the defendant, but *Allstate Insurance Company has agreed to be bound by the results, as to liability and damages, in the suit between Hunt and Rose.*"

In its alternative request to have its name withheld from the jury, Allstate stated in part:

"Since Allstate Insurance Company has agreed to be bound by the tort verdict, per the above, withholding Allstate Insurance Company's identity from the jury will not work a hardship on plaintiff and will not impose upon the courts any multiplicity of suits. Allstate Insurance Company *here and now stipulates* that any facts determinative of Allstate Insurance Company's liability under their contract with Hunt may be decided by the trial court, as a trier of fact, in the instant [Hunt v. Rose] action." [Emphasis added]

Based in part on Allstate's agreement and stipulations to be bound by the outcome of the separate trial of Hunt v. Rose, the trial court granted Allstate the separate trial; and the case of Hunt v. Rose was set for trial. It was not until the day Hunt v. Rose was set for trial that Allstate attempted to withdraw its consent.

When the case was called for trial, the court heard from all counsel. Allstate's counsel said that Rose had agreed for him to be his leading counsel; that Allstate waived its rights to subrogation; and repeated the stipulation to be bound. He conceded, "Of course, there is a conflict between Allstate and Hunt," just as between any other plaintiff and defendant. He also conceded that there had been no agreement on Hunt's part, when Allstate consented to be bound, that Allstate would defend Rose against Hunt. Counsel for Hunt recounted the disclosures Allstate had gotten from Hunt.

The court expressed concern over the conflict of interest. He concluded that Allstate had not been required to give its consent to be bound but, "Once you give your consent, you have got no business coming over here and trying to defeat your own policyholder's rights in so far as Rose is concerned." Counsel for Allstate then attempted to withdraw the consent.

In view of the question of the conflict of interest and the above circumstances, the trial court did not abuse its discretion in not allowing Allstate to withdraw its consent to the suit of Hunt v. Rose and its agreement to be bound thereby as to the liability of Rose and the amount of damages.

We see no conflict in this opinion and in the holding of this court in State Farm Mutual Automobile Insurance Co. v. Matlock, 462 S.W.2d 277 (Tex.1970). If Hunt had sued Allstate directly, without filing a suit against Rose, he could recover against the insurer by proving his case. This, according to *Matlock,* would include proving that Rose is in fact uninsured.

Assuming, as we do, that in the tort action of Hunt v. Rose liability and damages were determined, there was little to be determined in the separate trial of Hunt v. Allstate. Allstate had repeatedly conceded that it had issued the insurance policy containing the uninsured motorist clause and that such a policy was in effect when the accident occurred. It had conceded that Rose was uninsured. Indeed it so states in its application for writ of error: "This is an uninsured motorist insurance coverage case. Hunt was the insured; Rose was the uninsured motorist, and Allstate was the insurer."

■ The plaintiff introduced the very lengthy (16 pages, plus 16 pages of endorsements and amendments) "Allstate Crusader Automobile Policy." It fails to state the amount of the coverage. The trial court took judicial notice that the minimum coverage applicable under the then existing statutes was $10,000. See Acts 58th Leg.1963, Chapter 506, page 1320; and Article 6701h, Sec. 1(10), Vernon's Ann.Civ.St. and Insurance Code 5.-06–1, Vernon's Texas Civil Statutes Annotated. V.A.T.S. This statute, together with the printed provisions of the policy, furnish the minimum coverage of $10,000 for Hunt.

The judgments of the trial court and the court of civil appeals are affirmed.

Dissenting opinion by POPE, J., in which WALKER, STEAKLEY and REAVLEY, JJ., join.

POPE, Justice (dissenting).

In my opinion the trial court erred in holding that the "cooperation" clause in an insurance policy created such a substantial conflict of interest between Hunt, the insured, and Allstate, his insurer, as to justify denying Allstate the right to defend Rose, an uninsured motorist, whose defenses were coincident with those of Allstate. The trial court also abused its discretion in denying Allstate's motion to withdraw its consent to be bound by a judgment in the action by the insured against the uninsured motorist. Allstate gave its consent upon the basis of circumstances which the insured thereafter substantially altered. Allstate, a named defendant, even if denied the right to defend Rose, also a named defendant, should have been permitted to defend itself. In my opinion Allstate was denied due process.

To the extent possible, Allstate eliminated every conflict which might arise between the parties. Rose, the uninsured motorist, did not assert a cross-action against Hunt, the insured. In such a situation Allstate would be duty bound to defend its insured. Allstate gave up its right of subrogation against Rose as a means of eliminating a conflict of interest between it and Rose. The undisputed evidence is that Rose agreed to this arrangement. This was Allstate's agreement: *"in return for an agreement by Allstate Insurance Company to waive its subrogation rights* against Eurice Rose, Eurice Rose and his attorney, Travis Hines, associated Tom Lorance to assist them and to take the lead in the defense of the case on the questions of liability and damages, on the theory that the interests of Eurice Rose and his attorney and Allstate Insurance Company and

its attorney were exactly coincidental * * *." (Emphasis added). See Sec. 7.-21, Widiss, Uninsured Motorist Coverage (1969).

Only one possible conflict remained, and it will be present in every uninsured motorist case. Allstate's policy requires Hunt to cooperate in developing the file on the facts of the collision. The record does not disclose the contents of the file, but we do know that Allstate possessed such a file. An insurer's use of a file prepared under a cooperation clause is no more significant in this case than it is in any suit brought by an insured against its insurer in any adversary proceeding. Allstate was a true adversary to Hunt at the time of trial. The best evidence of the fact is that Hunt filed this suit and named Allstate as an adverse party defendant. Insured persons daily try cases against their insurers with files developed under a "cooperation" or similar clause. This is true in automobile, fire, life, theft, accident, wind, and workmen's compensation insurance cases as well as in direct actions brought by an insured against its own insurer.

There are good reasons that we should not hold that the mere existence of a file in the possession of the insurer establishes substantial conflict between the insurer and the insured. For one thing, assuming that a conflict is created, the majority does not resolve that conflict but only postpones it. As a result of the majority's decision, no insurer will in the future give its consent to be bound by the results of a judgment between its insured and an uninsured motorist. A suit against the insurer alone will always be necessary. In that suit the insured will be required to try the liability of the uninsured motorist and the damage issues, just as he would in a suit against the uninsured motorist. In defending on these issues the insurer will be entitled to use the file it developed on the case. The conflict alleged to be present in the case before us will again arise. The only way this "conflict" can ever be eliminated would be to deny the insurer the right to

defend on the issues of damages and the liability of the uninsured motorist.

The decision of the majority leaves no room for the exercise of discretion in uninsured motorist cases. If the possession of a file by the insurer is the basis for finding a conflict, it will be a rare case in which any insurer escapes the disqualification. It is the business of insurers to develop files on accidents covered by their policies. The discretion which the majority upholds is really a rule of law which can operate only in one direction and always against the insurer.

The worst feature of the majority holding, however, is that it defeats an economy of judicial effort. This has been the basis for decisions in most other states which reach an opposite result. Other jurisdictions have freely permitted insurers to intervene on the side of the uninsured motorist so that the same issues need not be twice tried. Many have required the insurer to intervene, so strong is the effort to avoid duplication of litigation. The significance of these many precedents in other states is that they permit or require the insurer to make common cause with the uninsured motorist because the same issues must be decided either in one trial or separate trials, if the insurer is to be held. Widiss, in Section 7.15, Uninsured Motorist Coverage (1969) writes:

In the event the insured elects to bring an action against the uninsured motorist, many jurisdictions will allow the insurance company which has issued uninsured motorist coverage to intervene for the purpose of presenting defenses on behalf of the uninsured motorist or joining in the defense. Depending on the jurisdiction, such intervention may be a matter of right or may depend on permission of the court.

If the insurance company intervenes as a defendant in the insured's action against the uninsured motorist, by necessity the issues of (1) whether the insured is legally entitled to recover from

the uninsured motorist and (2) the amount of such recovery will definitely be resolved as between the insured and the company (as well as between the insured and the uninsured motorist). Therefore, in all probability nothing is left for a subsequent arbitration or litigation.

In State Farm Mutual Automobile Ins. Co. v. Glover, 113 Ga.App. 815, 149 S.E.2d 852 (1966), the court held that the insurer's right to intervene was based upon the constitutional due process issue of the insurer's right to defend against its liability under its policy. The court wrote:

* * * Nor do we consider that there is a conflict of interest as to the insurer and insured any more than there would logically be if the insurer denied coverage under the contract. In such a case as this the interests of both parties, plaintiff and insurer, are represented by counsel and guarded by the court. Any other construction of the uninsured motorist law would render it unconstitutional as it applies to the facts of this case. See State of Missouri ex rel. State Farm Mutual Automobile Ins. Co. v. Craig, 364 S.W.2d 343 (Mo.App., 95 A.L.R.2d 1321, Anno. p. 1330).

The gravity of the supposed conflict of interest arising out of the cooperation clause has not been appreciated in a host of cases which have permitted or required the insurer to make common cause with the uninsured motorist. Among the cases are: State Farm Mutual Automobile Ins. Co. v. Glover, supra; State Farm Mutual Automobile Ins. Co. v. Jiles, 115 Ga.App. 193, 154 S.E.2d 286 (1967); Lamb v. Horwick, 48 Ill.App.2d 251, 198 N.E.2d 194 (1964); Wert v. Burke, 47 Ill.App.2d 453,

197 N.E.2d 717 (1964); Dominici v. State Farm Mutual Automobile Ins. Co., 143 Mont. 406, 390 P.2d 806 (1964); Missouri ex rel. State Farm Mutual Automobile Ins. Co. v. Craig, 364 S.W.2d 343, 95 A.L.R.2d 1321 (Mo.App.1963); Heisner v. Jones, 184 Neb. 602, 169 N.W.2d 606 (1969); Allstate Ins. Co. v. Pietrosh, 85 Nev. 310, 454 P.2d 106 (1969); Matthews v. Allstate Ins. Co., 194 F.Supp. 459 (E.D.Va.1961). Contra: MFA Mutual Ins. Co. v. Bradshaw, 245 Ark. 95, 431 S.W.2d 252 (1968); Hernandez v. State Farm Mutual Automobile Ins. Co., 192 So.2d 679 (La.App.1966); Holt v. Bell, 392 P.2d 361 (Okl.1964).

I would hold that there is no conflict in this case which justifies the holding that Allstate was disqualified to appear on behalf of Rose, the uninsured motorist.

### There Was Abuse of Discretion

The trial court abused its discretion in refusing Allstate's motion to withdraw its consent to be bound by the Hunt-Rose judgment after Hunt substantially changed the posture of the lawsuit. This is the sequence of events. Hunt instituted its suit, naming Rose only, on April 8, 1966. On October 5, 1967, Allstate agreed with Hunt that it would be bound by the judgment as to liability and damages in the suit by Hunt against Rose. Allstate, under the undisputed facts, was willing to make that agreement after it obtained from Rose an agreement that Allstate would take the lead in the Hunt-Rose suit. To obtain Rose's agreement Allstate surrendered its subrogation rights. In an effort to consolidate these trials Allstate also waived its coverage defenses and stipulated its contractual liability.[1] For reasons already discussed, this should have permitted Rose and Allstate to defend jointly the issues

---

1. Now, simply to avoid splintering and multiple trials, and to litigate finally and forever all issues between all parties, Allstate, with full disclosure to the plaintiff, to Rose, to all attorneys and to the Court, has been willing *to waive any coverage defense,* to stipulate its contractual liability, *to waive the subro-*

*gation,* to stipulate those things which are plaintiff's burden of proof, *including that Rose was uninsured,* and all other things, and let its liability be established by a jury under legal evidence with an honest defense on the questions of liability and damages. (Allstate's statement in open Court). (Emphasis added.)

which Hunt otherwise had to prove against each of them in two suits.

It was at this point that Hunt, not Allstate, changed the entire situation. Hunt decided to join Allstate as a first-named defendant in an amended petition which it filed on October 10, 1967. This converted the action into a direct action against the insurer with the uninsured motorist joined. I find nothing wrong with this procedure; Allstate now was an open adversary, not only in fact but by Hunt's own pleadings. Hunt, no doubt, thought that it would aid his case for a jury to think that Allstate was the insurer for Rose.

This new situation was not of Allstate's making. If Allstate had known at the time it gave its consent to be bound that it would later be joined as a defendant, there would have been no need for its consent, and it could have defended itself on both the liability and damage issues. If Allstate had known that Hunt would name it as a defendant, there would have been no need for it to surrender its subrogation rights against Rose. If Allstate had known that it would not be permitted to participate in the trial, it would surely not have consented to be bound by the results of the trial. Allstate thus reasons, and I agree, that Hunt's designedly changing the posture of the case and making a new party entitled it to a withdrawal of the consent to be bound.

The correct alignment of parties in uninsured motorist cases is a new problem in Texas. Allstate followed the teaching of other jurisdictions and surrendered every right which might otherwise create conflicts of interest. It then had good reason to think that it could defend Rose on their common defenses without disclosing the fact of insurance, because that arrangement was consistent with the settled Texas practice. Accord, Widiss, Uninsured Motorist Coverage, Sec. 7.21 (1969). The majority opinion accepts this principle, saying in its opinion, " * * * there is something to be said on behalf of the unin-

sured motorist who might not want to have an insurance company as a co-defendant." This court has said, "This court takes judicial knowledge of the fact that a jury is more apt to render a judgment against a defendant, and for a larger amount, if it knows that the defendant is protected by insurance." Barrington v. Duncan, 140 Tex. 510, 169 S.W.2d 462 (1943); Kuntz v. Spence, 67 S.W.2d 254 (Tex.Com.App. 1934, holdings approved); 2 McCormick and Ray, Texas Law of Evidence, Sec. 1539 (2d ed. 1956). This was the reason for the arrangement between Allstate and Rose that Allstate's identity would not be disclosed to the jury. It was this settled practice which Allstate and Rose were respecting and by which all aspects of this three-party problem would have been determined, but for Hunt's making new parties in its desire to name its own insurer as co-defendant in such a way as to convey the idea to the jury that Allstate was the uninsured motorist's insurer.

When it became apparent that Hunt had disclosed the fact of insurance, and in an effort to respect this accepted Texas practice, Allstate had to take some steps. It moved that its identity be withheld from the jury. Alternatively it moved for a separate trial. The trial court granted the motion for separate trial. This motion for separate trial and the trial court's favorable order is now held to be sound reason for refusing to permit Allstate to withdraw its consent to be bound. The reasoning is that Allstate received the very thing it asked for, a separate trial.

Allstate did not receive a separate trial. It received no trial at all. On December 16, Rose and Allstate appeared for trial, and after a hearing before the court, Allstate was excluded from the trial and ordered to conceal its file from Rose. Rose's attorney asked for a delay and said that it had announced ready on December 13, "[p]redicated, your Honor, on the fact that Mr. Lorance (Allstate's attorney) would be the lead counsel in the case." The trial court postponed the trial one day, until De-

cember 17, and on December 18 a jury verdict was returned against Rose in the sum of $19,106.20.

We come to the "separate trial." On January 9, 1969, Allstate's trial came on for hearing. The court took charge of developing the record. It instructed counsel for Hunt to introduce in evidence the Allstate policy which Hunt's counsel did not have and had to send for. The court then told Hunt's counsel to introduce Allstate's motion to sever, Allstate's motion to withhold its identity, and Allstate's consent to be bound. Following the introduction of those documents and a record of the proceedings which consumed the first three pages of the statment of facts, the court ruled, "The Court finds that there is no issue of fact to be determined in the suit * * *." Allstate had already admitted coverage.[2] It received a separate trial only on the issue it had already admitted; it was denied a trial on the issues which it disputed. Allstate received a phantom trial, yet the court of civil appeals holds that Allstate got what it asked for.

### Allstate's Right To Defend Itself

There is yet a more compelling reason that the judgment of the trial court should be reversed. The agreement which Allstate signed and delivered to Hunt was not a confession of liability. It was a consent that one judgment would settle the issues between Hunt, Rose, and Allstate. This is the letter agreement:

"Please take this as the necessary written consent of Allstate Insurance Company under the policy that the results of the litigation of the tort question, if any, and the amount of damages sustained by Mr. Hunt, if any, (subject to the applicable limits within the policy) shall be binding upon Allstate Insurance Company so that these matters will be taken as established with relation to any claim of Mr. Hunt under his uninsured

motorist coverage with Allstate Insurance Company."

The situation on December 16, when this case was set for trial, was that Hunt had named Allstate as a co-defendant. Any question of conflict left the case when Hunt filed its amended petition and joined Allstate, who then had the legal right to defend itself. It is no answer to say that Allstate had agreed to be bound by the judgment in that case. It was willing to be bound by the one judgment. The consent to be bound became immaterial after the joinder of Allstate, because thereafter there could be only one judgment whether Allstate consented or not. The only escape from this conclusion is to make of the consent to be bound by one judgment a confession of liability. I can not find that meaning in the words stated above.

The opinion of the majority will generate unnecessary litigation in cases such as this one, in which any possible conflicts arising out of a cross-action or the right to assert a subrogation claim have been eliminated. In State Farm Mutual Automobile Insurance Company v. Matlock, 462 S.W. 2d 277 (Tex.1970), we took a short step toward simplifying the practice involving uninsured motorist clauses. We alluded to Article 5.06–1, Insurance Code, and said that the code did not require the insured first to obtain a judgment against the uninsured motorist prior to commencing a direct action against the insurer. We disposed of that case, however, on a different point. Consistent with the spirit of Matlock, I would hold that an insured may also bring a direct action against the insurer and join the uninsured motorist so one suit could resolve the whole problem. I see no difference in the two situations. I would also hold that an insured may bring a direct action against his insurer, and that the insurer would be permitted to intervene on the side of the uninsured motorist. The opinion of the majority runs counter to Matlock and forces a practice of unneces-

2. See footnote 1.

sary prior suits before action may be commenced against the insurer.

I respectfully dissent. I would reverse the judgments below and remand this cause to the trial court so Allstate can represent itself in the action in which it is a named adversary defendant.

WALKER, STEAKLEY and REAVLEY, JJ., join in this dissent.