ANGELINA DOMINICI AND GUS DOMINICI, PLAINTIFFS AND
RESPONDENTS, v. STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, APPELLANT AND DEFENDANT.

No. 10648
Submitted March 3, 1964. Decided April 2, 1964.
390 P.2d 806.

S. O. Meyer, Butte (argued), James E. Purcell, Butte, John
Weaver, Great Falls (argued), for appellant.

Robert A. Poore, Butte (argued) for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from two judgments on verdicts obtained in district court by reason of appellant's alleged liability under its policy of automobile insurance. The two actions involved were consolidated for trial and will be treated together on this appeal.

Appellant will hereinafter be referred to by a portion of its corporate name, State Farm. Respondents, Gus and Angelina Dominici will hereinafter be referred to collectively as plaintiffs.

Gus Dominici, one of the plaintiffs, purchased a policy of insurance from State Farm. Although the policy was one for public liability and property damage, it contained a provision which would compensate him, or anyone traveling with him, for injuries received in an accident with an uninsured motorist. In return for the premium paid, State Farm agreed "To pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured automobile because of bodily injury sustained by the insured, caused by accident and arising out of the ownership, maintenance or use of such uninsured automobile; * * *." The coverage was limited to $5,000 for injuries to one person and subject to a maximum of $10,000 for each accident.

This policy contained other provisions which are of vital interest on appeal. It seems best to set them out in the beginning of this opinion so the facts may be kept in proper perspective.

A condition precedent to a claim under this portion of the policy required that "If, before the company makes payment of loss hereunder, the insured or his legal representative shall institute any legal action for bodily injury against any person

or organization legally responsible for the use of an automobile involved in the accident, a copy of the summons and complaint or other process served in connection with such legal action shall be forwarded immediately to the company by the insured or his legal representative."

The insurance contract further contained an exclusion whereby the above-mentioned coverage would not apply "(a) to bodily injury to an insured * * * with respect to which such insured, his legal representative or any person entitled to payment under this coverage [if he or they] shall, without written consent of the company, make any settlement with or *prosecute to judgment* any action against any person or organization who may be legally liable therefor; * * *." (Emphasis supplied.)

On October 28, 1960, while this policy was in full force and effect, both plaintiffs were involved in a collision with a motorist, whom the trial court found was uninsured. Plaintiffs, each, were injured. After the accident plaintiffs advised State Farm of its occurrence and availed to the Company all the information required by it as to the facts of the accident and the nature and extent of the injuries suffered. Demand thereafter was made upon State Farm for payment of the coverage afforded under the uninsured motorist clause. It was approximately 23 months after the accident before State Farm formally refused to pay. This refusal was based on grounds of insufficiency of proof as to the amount of injuries suffered and to the liability and status of the uninsured motorist named Nash.

Although the question is not directly before us on appeal, it should be pointed out that this policy contained a provision requiring that "* * * for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration." Another clause set out the conditions of arbitra-

tion. State Farm's amended answer made no mention of plaintiffs' refusal to arbitrate; therefore, the propriety of this clause is not before this court at this time.

In order to establish what damages, if any, they were "legally entitled to recover" against the uninsured motorist each plaintiff commenced a suit against Mr. Nash, the driver of the automobile which had struck them. Said suits were instituted October 23, 1962, which was approximately three weeks after State Farm rejected plaintiffs' claim.

At the time of commencing such suits plaintiffs each advised State Farm thereof and sent said Company copies of the summons and complaint in each action, as per the requirements of the insurance contract. Upon receipt of this information, and it is admitted in the answer, State Farm "advised plaintiff that it [State Farm] had no interest in said suit." Each suit brought against the uninsured motorist, Nash, resulted in default judgments being taken against him. Although the suits were uncontested the plaintiffs adduced factual and medical proof in support of their complaints and were awarded judgments. Said judgments were for $75,000.00, in favor of Mrs. Dominici and $35,000.00, for Mr. Dominici, plus costs. Plaintiffs have been unable to collect on either judgment.

The issue of whether or not Nash was "uninsured" within the terms of the policy could not be adjudicated in these abovementioned suits against Nash, therefore, plaintiffs each commenced the suits before us now on appeal, on January 10, 1963. These suits were consolidated for trial and are identical except for the parties plaintiff. State Farm defended on the ground that each plaintiff had instituted an action against Nash without written consent of State Farm and had prosecuted said claim to judgment. State Farm claims this violated the express terms of the policy, as set forth above, and precluded plaintiffs' right to recover in the court below.

At trial only three witnesses were called by plaintiffs. One of these, plaintiff Gus Dominici, was not cross examined by

attorneys for State Farm. Plaintiffs then rested; whereupon, State Farm's motion to dismiss was denied. State Farm offered no testimony and rested their case. Plaintiffs' motions for directed verdict were granted and the jury returned a verdict for each plaintiff in the amount prayed for; to wit, $5,000 in each action. Judgment upon each verdict was entered.

State Farm lists six specifications of error. However, it is readily seen that the only question involved here is whether the exclusion proscribing plaintiffs' recovery, in cases where settlement is made or suit prosecuted to judgment against one who may be legally liable therefor, is valid and enforceable?

The type of insurance coverage found here is rather new and beneficial. For a small premium it provides protection to those who may be injured by someone not financially responsible or foresighted enough to adequately provide for his victims. Financial responsibility laws like Montana's permit the uninsured operation of vehicles until there has been an accident. Therefore, insurance companies have provided this coverage as some small protection. As was stated concerning this type of insurance:

"It may be observed at this point that the insurance provided the plaintiff is against loss suffered by him, rather than against liability to others incurred by him. Thus it is not indemnity insurance in the usual sense. See 44 C.J.S. Insurance § 19, p. 480. Nor is it a contract to indemnify the third-party uninsured motorist against liability, for the contract is not for the latter's benefit. His legal liability will be unaffected by any payment made by the insurer, who will then be subrogated to the plaintiffs' rights against the uninsured motorist.

"The undertaking of the insurer more closely resembles the undertaking contained in other provisions of the standard policy to pay to the insured medical expenses suffered by him as a result of injury by automobile, although the undertaking now in question is limited to payment of damages for bodily injuries occasioned by a limited category of tort feasors, name-

ly, uninsured operators against whom the insured is 'legally entitled to recover.' See 24 Insurance Counsel Journal 134, 136-137. Thus uninsured motorist insurance more closely resembles accident insurance restricted to a limited class of accident, than it does the type of insurance commonly regarded as indemnity insurance. See 44 C.J.S. supra [Insurance] § 2, p. 474.

"The company agrees to pay the insured whatever sums he is 'legally entitled to recover' from the uninsured motorist. Although to establish the insurer's obligation it becomes necessary to determine in some fashion what, if any, amount the insured is legally entitled to recover from a third person, the insurer does not for that reason become the insurer of the third person, nor entitled to represent him, or to control his defense if he is sued. The contract of insurance does not entitle the plaintiff's insurer as a matter of law to dismissal of the pending action, even though it is permitted to intervene in the action, or compelled to appear as justice may require. See Perkins v [Exeter] Associates, 100 N.H. 247, 123 A.2d 825." Kirouac v. Healey, 104 N.H. 157, 160, 181 A.2d 634, 636.

The cases on this subject are limited in number and this is a question of first impression in this state.

The problem to be resolved here is what effect, if any, did the judgments taken by each plaintiff have upon the rights and obligations of the insured and insurer in light of the "no judgment" clause of the insurance contract? State Farm contends that no action can now lie against them because there has not been full compliance with the terms of the policy. Plaintiffs rely upon the prohibition contained in R.C.M.1947, § 13-806. This statute states:

"Every stipulation or condition in a contract by which any party thereto is restricted from enforcing his rights under the contract, by the usual proceedings in the ordinary tribunals * * * is void."

It is plaintiffs' position that State Farm agreed to pay all

sums plaintiffs were legally entitled to recover (up to and including the limits of the policy coverage) from an uninsured motorist; and, the "no judgment" clause would restrict plaintiffs from enforcing these rights. Therefore, this clause in the policy would be void under section 13-806.

We hold with the contentions of plaintiffs.

The clauses involved establish the procedure under which this contract was to have been performed. "The primary and essential part of the contract was insurance coverage, not the procedure for determining liability." Boughton v. Farmers Insurance Exchange, (Okl.1960) 354 P.2d 1085, 1089, 79 A.L.R. 2d 1245. The conditions and requirements here are not in themselves unreasonable and fully show the intent of the contract and the protection offered. However, this contract should be interpreted in the light of our decision in Green v. Wolff, 140 Mont. 413, 423, 372 P.2d 527, 533. We said:

"* * * a contract requiring all differences or controversies arising between the parties as to their rights and liabilities to be submitted to arbitration will not be allowed to interfere with, or bar the litigation of such controversies when brought into court. The conclusion was reached on the basis of R.C.M. 1947, § 13-806, which makes void contract provisions restricting access to the courts."

We can see no compelling reason why the "no judgment" clause in this particular instance should be treated any differently.

As was stated before the question of arbitration is not now before this court, but, as we read this contract we note that the question of this type of arbitration is inexorably tied to the "no judgment" clause. They complement one another to the point one cannot exist without the other. Where such arbitration is allowed and countenanced there is nothing unreasonable about the latter mentioned clause. This would have been the easiest and most expeditious method of handling the situation. It was the thing the parties contracted to do. But

where contracts to arbitrate future controversies are not enforceable a "no judgment" clause, as exists before us, necessarily becomes unreasonable and itself must fall before the intent of section 13-806. The case of Boughton v. Farmers Insurance Exchange, supra, is on all fours with the instant case, even to the point of their statute being identical with our section 13-806.

We have perused the cases cited by both parties. In all but the one above-mentioned we find legal questions which are clearly distinguishable from, but not inconsistent with, Boughton v. Farmers Insurance Exchange, supra, and our opinion in this decision.

In the case of Levy v. American Automobile Insurance Co., 31 Ill.App.2d 157, 175 N.E.2d 607, 610-611, we find a situation where contracts to arbitrate future controversies are not valid, yet the insurance company refused to grant permission to sue the uninsured motorist. There the court said:

"The defendant's [Insurance Company] position is comparable to a situation where one prevents the performance of a condition of his own promissory duty. The rule there applied is that 'one who unjustly prevents the performance or the happening of a condition of his own promissory duty thereby eliminates it as such a condition. He will not be permitted to take advantage of his own wrong, and to escape from liability for not rendering his promised performance by preventing the happening of the condition on which it was promised.' Corbin on Contracts, Vol. 3A, section 767, p. 540.

"In the case at bar, the condition of the company's promise to pay is the ascertainment of the legal liability of the third party The company can prevent this determination by the simple device of refusing to grant the insured its written consent to prosecute the action to judgment. There was an implied promise on the part of the Insurance Company that it would not unreasonably or arbitrarily withhold its written consent. The company gave no reason for its refusal to allow the

plaintiffs to obtain a judgment against the uninsured motorist. It appeared that the company wanted the matter arbitrated and that if the insured refused to submit to arbitration, it would prevent a determination of its liability on the policy. Under these circumstances, the action of the company in arbitrarily withholding its written consent constitutes a violation of the implied provisions of the policy and consequently the exclusion clause is not a bar to this action."

In the instant case, State Farm admitted they "advised plaintiff that it [State Farm] had no interest in said suit." This, in conjunction with the rest of the answer, admits a refusal to give consent to sue. Without arbitration plaintiffs are left without a remedy to establish the applicability of the uninsured motorist clause and the amount of damages. State Farm cannot be allowed to take the premium with one hand while refusing recovery with the other.

We must admit that this, or any other, insurance carrier is thrown upon the horns of a dilemma by this interpretation of this type of insurance contract. However, the harshness may be ameliorated through the use of intervention (See State of Missouri ex rel. State Farm Mutual Automobile Insurance Co. v. Craig, Mo.App., 364 S.W.2d 343), or possibly a plaintiff's use of joinder. This court appreciates the problems involved in such insurance coverage and the benefits to be derived by society in general. But we cannot countenance unreasonable obstructions which restrict the use of the courts to be placed in the path of a just recovery. So long as proper and timely notice is given an insurance carrier so their rights are not prejudiced we do not feel that they are being imposed upon.

For the foregoing reasons the decision of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES JOHN CONWAY HARRISON, ADAIR and DOYLE concur.