NATIONWIDE MUTUAL INSURANCE COMPANY *v.*
WILLIAM JACKSON WEBB

\* \* \*

MARYLAND AUTOMOBILE INSURANCE FUND *v.*
ANTHONY J. FRANZ, Indiv. and t/a
Diamond Cab

[No. 11, September Term, 1980.]

*Decided November 6, 1981.*

722

The causes were argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*John W. T. Webb* and *Ernest I. Cornbrooks, III,* with whom were *Webb, Burnett & Duvall* on the brief, for appellant Nationwide Mutual Insurance Company. *Sidney G. Leech,* with whom were *Semmes, Bowen & Semmes* on the brief, for appellant Maryland Automobile Insurance Fund.

*Thomas S. Simpkins* for appellee William Jackson Webb. *Douglas W. Knight,* with whom were *Leonard, Phillips & Knight* on the brief, for appellee Anthony J. Franz, Indiv. and t/a Diamond Cab.

ELDRIDGE, J., delivered the opinion of the Court.

The Maryland Legislature has mandated that every motor vehicle liability insurance policy issued, sold or delivered in this State after July 1, 1975, shall contain coverage in certain minimum amounts "for damages which the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in an accident arising out of the ownership, maintenance, or use of such uninsured vehicle." [1] Maryland Code (1957, 1979 Repl. Vol.), Art. 48A, § 541 (c). That subsection, known as the uninsured motorist law, goes on to provide, *inter alia,* that any provision in an uninsured motorist endorsement which requires the submission to binding arbitration of any dispute between the insured and insurer is prohibited and shall be of no legal effect. [2]

---

1. The minimum amounts of insurance for personal injury claims are $20,000.00 for any one person and $40,000.00 for any two or more persons, in addition to interest and costs.

2. Section 541(c), now 541 (c) (2) (1981 Cum. Supp.), provides in its entirety:

"(c) *Uninsured motorist coverage.* — In addition to any other coverage required by this subtitle, every policy of motor vehicle liability insurance issued, sold, or delivered in this State after July 1, 1975 shall contain coverage, in at least the amounts required

We granted petitions for writs of certiorari in these two cases, and ordered that the cases be consolidated, because both petitions seemed to encompass the same important legal issue arising under the uninsured motorist statute. That issue concerned the enforceability, in light of the statute and the surrounding circumstances, of a "consent to sue" clause in an uninsured motorist endorsement. The clause provided that no judgment against any person alleged to be legally responsible for the insured's injuries will be conclusive, as between the insured and the insurer, on the issues of the liability of that person to the insured or the amount of damages which the insured is entitled to recover, "unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the [insurance] Company." Although both cases had appeared to present this issue, it is now clear that only one of them, *Maryland Automobile Insurance Fund v. Franz,* actually involves the question. Consequently, we shall deal with the cases separately in this opinion.

## I. Maryland Automobile Insurance Fund v. Franz

On January 1, 1976, the Maryland Automobile Insurance Fund (MAIF) issued, upon payment of the requisite premium, an automobile liability insurance policy to Anthony J. Franz, providing insurance coverage, including an

under Title 17 of the Transportation Article, for damages which the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in an accident arising out of the ownership, maintenance, or use of such uninsured motor vehicle. The coverage required under this subsection (c) shall be in such form and subject to such conditions as may be approved by the Commissioner of Insurance. Any provision in any policy of motor vehicle liability insurance issued after July 1, 1975, with respect to the coverage provided for damages sustained by the insured as a result of the operation of an uninsured motor vehicle, which commands or requires the submission of any dispute between the insured and the insurer to binding arbitration, is prohibited and shall be of no legal force or effect. In no case shall the uninsured motorist coverage be less than the coverage afforded a qualified person under Article 48A, §§ 243H and 243-I. The coverage required under this subsection shall be primary to any right to recover from the Maryland Automobile Insurance Fund pursuant to § 243H of this article."

uninsured motorist endorsement, on Mr. Franz's taxicab from January 1, 1976, until January 1, 1977.[3] Under one of the "coverage" sections of the endorsement, it was provided that no default judgment against anyone "alleged to be legally responsible" for the insured's damage "shall be conclusive, as between the insured and the company," as to liability or damages "unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the Company." The same coverage section provided that the insured's legal entitlement to recover against the uninsured motorist and the amount of that recovery, in the absence of an agreement between the insurer and insured, was to be determined by arbitration.[4]

---

**3.** MAIF is a state operated automobile insurance company, created by Ch. 73 of the Acts of 1972, which "shall sell, issue, and deliver, upon payment of a premium," automobile insurance policies to persons having difficulty obtaining automobile insurance from private insurers. Code (1957, 1979 Repl. Vol. and 1981 Supp.), Art. 48A, §§ 243-243F. In addition to its function as an insurance company, MAIF succeeded the Unsatisfied Claims and Judgment Fund in its role of protecting innocent persons injured by uninsured or improperly insured motorists, and not covered by an uninsured motorist endorsement. Art. 48A, §§ 243G-243L. *See* State Farm v. Md. Auto Ins. Fund, 277 Md. 602, 603 n. 1, 356 A.2d 560 (1976); Bright v. Unsat. C. & J. Fund Bd., 275 Md. 165, 166 n. 1, 338 A.2d 248 (1975).

**4.** The coverage section stated as follows:

"1. UNINSURED MOTORISTS COVERAGE
(Damages for Bodily Injury and Property Damage Covered by Uninsured Highway Vehicles)

The company will pay all sums which the insured or his legal representative shall be legally entitled to recover as damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage caused by accident and arising out of the ownership, maintenance or use of such uninsured highway vehicle, provided, for the purposes of this coverage, determination as to whether the insured or such representative is legally entitled to recover such damages, and if so the amount thereof, shall be made by agreement between the insured or such representative and the company or, if they fail to agree, by arbitration.

"No default judgment against any known person or organization alleged to be legally responsible for the bodily injury or property damage shall be conclusive, as between the insured and the company, as to the establishment of legal liability or of the amount of damages to which the insured is legally entitled, unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the Company."

In addition, there was an exclusion in the uninsured motorist endorsement if the insured or his representative "without written consent of the company, made any settlement with any person or organization who may be legally liable" for the insured's bodily injury or property damage. Finally, the endorsement in the MAIF policy contained a detailed arbitration clause.[5]

On January 17, 1976, the insured, Mr. Franz, while operating his taxicab, was injured in a collision in Baltimore City between his vehicle and an automobile owned and operated by John Henry Adams. The insurance policy on Adams's automobile had been cancelled the day before because of nonpayment of premium, and thus Adams was an uninsured motorist. It is undisputed that Franz timely notified MAIF of the accident, made a claim under the uninsured motorist endorsement of his policy, submitted proof of his injuries, and demanded payment from MAIF. The insurer refused to pay Franz's claim without giving any reason for its refusal.

---

5. The arbitration clause was as follows:

"If any person making the claim hereunder and the Company do not agree that such person is legally entitled to recover damages from the owner or operator of an uninsured highway vehicle because of bodily injury or property damage to the insured, or do not agree as to the amount payable hereunder, then each party shall, upon written demand of either, select a competent and disinterested arbitrator. The two arbitrators so named shall select a third arbitrator, or if unable to agree thereon within 30 days, then upon request of the insured or the Company such third arbitrator shall be selected by a judge of a court of record in the county in which such arbitration is pending. The arbitrators shall then hear and determine the question or questions so in dispute, and the decision in writing of any two arbitrators shall be binding upon the insured and the Company each of whom shall pay his or its chosen arbitrator and shall bear equally the expense of the third arbitrator and all other expenses of the arbitration. Unless the parties otherwise agree, the arbitration shall be conducted in the county in which the insured resides and in accordance with the usual rules governing procedure and admission of evidence in court of law, or in the alternative, if both parties agree, by arbitration in accordance with the rules of the American Arbitration Association and judgment upon the award rendered by either method of arbitration may be entered in any court having jurisdiction thereof. Such person and the Company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this endorsement."

·After MAIF's rejection of his claim, Franz, in September 1976, filed in the District Court of Maryland, sitting in Baltimore City, a tort action against the uninsured motorist Adams, seeking recovery of his damages resulting from the accident. Also in September, Franz, by his attorney, sent MAIF a letter notifying the insurer of the suit, enclosing copies of the "suit papers," and requesting that MAIF appear in the matter. MAIF replied by a letter dated September 28, 1976, informing Franz's attorney that it would not participate in the case. Franz's attorney, on December 2, 1976, and again on January 3, 1977, wrote to MAIF and informed the insurer that the tort suit was scheduled for trial on January 25, 1977, that, if MAIF did not intervene and enter a defense, Franz would seek a default judgment against Adams (who, apparently, had made it known that he would not defend), and that Franz would take steps to enforce the judgment against MAIF under the uninsured motorist endorsement of the policy. At the trial of the tort suit on January 25, 1977, MAIF did not appear and a default judgment was entered in favor of Franz and against Adams for $3,182.84 plus court costs. Shortly thereafter, Franz notified MAIF of the judgment and requested payment, but the insurer refused.

Franz then instituted the present contract action against MAIF in the Superior Court for Baltimore City, claiming damages of $3,196.84 (consisting of the $3,182.84 tort judgment plus $14.00 court costs in the tort action). Franz filed a motion for summary judgment, taking the position that MAIF, having had notice and an opportunity to intervene in the tort action but having refused to intervene, was liable as a matter of law for the amount of the tort judgment against Adams. Franz contended that the clause in the uninsured motorist endorsement, requiring MAIF's consent for the prosecution of the tort suit in order for the insurer to be bound by the default judgment, was unenforceable under the uninsured motorist law.

MAIF opposed the motion for summary judgment on the ground that it had not consented to the prosecution of the tort suit against Adams and that, therefore, it was not bound

by the default judgment under the terms of the endorsement. MAIF's position was that Franz was required to relitigate, in the contract action, the issues of Adams's tort liability and the amount of damages. MAIF's answer did not suggest that it had any contract defenses apart from the issues resolved in the tort suit; instead, the insurer relied entirely upon its asserted right under the policy to have the Superior Court, in the contract action, "adjudicate the legal liability of the uninsured motorist, John Henry Adams, to the Plaintiff, Anthony J. Franz . . . ."

The Superior Court, agreeing with MAIF's position, denied the motion for summary judgment and ordered that the case be tried. At the subsequent non-jury trial, MAIF defended on the ground that Franz's contributory negligence had been the proximate cause of the collision between his taxicab and Adams's uninsured automobile. At the conclusion of the trial testimony, the court found that Franz was not contributorily negligent and awarded him judgment in the amount of $3,000.00 plus costs.

MAIF appealed to the Court of Special Appeals, contending that the trial court's findings were clearly erroneous and that Franz was guilty of contributory negligence. Franz took a cross-appeal, insisting that the issues in the earlier tort case should not have been re-litigated in the contract action, that under the circumstances MAIF was bound by the judgment in the tort suit, and that, therefore, he was entitled to a judgment for $3,196.84 instead of the $3,000.00 awarded.

The Court of Special Appeals, agreeing with Franz, modified the judgment of the Superior Court of Baltimore City by raising the award to the same figure as the judgment in the tort case, and, as modified, affirmed. The intermediate appellate court, in an opinion by Judge Lowe, held that the clause in the uninsured motorist endorsement, requiring the insurer's consent to prosecute a tort suit against the uninsured motorist in order for that judgment to be binding, was void under the statute and that an insurer, having notice of the tort action and an opportunity to intervene, was

bound by the determinations in that tort action regarding the liability of the uninsured motorist to the insured and the amount of damages, 44 Md.App. 547, 409 A.2d 1127 (1980). This Court then granted MAIF's petition for a writ of certiorari, 287 Md. 754.

This Court has consistently rejected attempts by insurers, as well as insureds and the insurance commissioner, to circumvent the plain language of the required coverage provisions of the statutes dealing with automobile insurance. *Yarmuth v. Gov't Employees Ins. Co.,* 286 Md. 256, 407 A.2d 315 (1979); *Reese v. State Farm Mut. Auto. Ins.,* 285 Md. 548, 403 A.2d 1229 (1979); *State Farm Mut. v. Ins. Comm'r,* 283 Md. 663, 670-674, 392 A.2d 1114 (1978); *Government Employees Ins. v. Harvey,* 278 Md. 548, 366 A.2d 13 (1976); *Travelers Ins. Co. v. Benton,* 278 Md. 542, 365 A.2d 1000 (1976); *State Farm v. Md. Auto Ins. Fund,* 277 Md. 602, 356 A.2d 560 (1976); *Maryland Auto Ins. Fund v. Stith,* 277 Md. 595, 356 A.2d 272 (1976).

Furthermore, in *Reese v. State Farm Mut. Auto. Ins., supra,* 285 Md. at 553, and in *State Farm v. Md. Auto. Ins. Fund, supra,* 277 Md. at 605, we held that conditions or limitations in an uninsured motorist endorsement, which provide less than the coverage required by the statute, are void. This uniformly recognized principle was well-stated by a Kansas Court as follows: "[A]ny provisions of the insurance policy which purport to condition, limit or dilute the unqualified uninsured motorist coverage mandated by the statute are void and unenforceable." *Barnett v. Crosby,* 5 Kan.App.2d 98, 612 P.2d 1250, 1252 (1980). In our view, the Court of Special Appeals correctly applied this principle in holding void the "consent to sue" clause relied upon by MAIF.

Two types of "consent to sue" clauses have been included in uninsured motorist endorsements used throughout the country, and the typical endorsement usually contains one or the other of these clauses. Under one type, coverage is completely lost if the insured prosecutes to judgment a tort action against the uninsured motorist without obtaining the

consent of his insurance carrier. Under the other type, coverage is not lost if the insured prosecutes the tort suit without his insurer's consent, but it is provided that the tort judgment shall not be conclusive or binding upon the insurer regarding the tort liability of the uninsured motorist and the amount of damages. The typical uninsured motorist endorsement also provides that the insured's entitlement to recover under the endorsement, and the amount, should be settled by binding arbitration, upon the demand of either party, if the insured and insurer cannot agree.[6] It is often said that the purpose of the "consent to sue" clauses is to supplement the arbitration clause or to protect the insurer's right to have its liability determined by binding arbitration, and that where statutes or public policy invalidate the binding arbitration provision, the "consent to sue" clauses fall with the arbitration clause. *Vernon Fire and Casualty Ins. Co. v. Matney,* 170 Ind.App. 45, 351 N.E.2d 60 (1976); *Indiana Insurance Company v. Noble,* 148 Ind.App. 297, 265 N.E.2d 419, 429-432 (1970); *Mizer v. State Automobile & Casualty Underwriters,* 195 N.W.2d 367, 372-373 (Iowa, 1972); *Bielski v. Wolverine Ins. Co.,* 379 Mich. 280, 288, 150 N.W.2d 788 (1967); *Kisling v. MFA Mutual Insurance Company,* 399 S.W.2d 245 (Mo. App. 1966); *State v. Craig,* 364 S.W.2d 343 (Mo. App. 1963); *Dominici v. State Farm Mutual Ins. Co.,* 143 Mont. 406, 412-413, 390 P.2d 806 (1964); *Heisner v. Jones,* 184 Neb. 602, 169 N.W.2d 606 (1969); *Allstate Insurance Co. v. Charmeski,* 16 Wis.2d 325, 332, 114 N.W.2d 489 (1962). *See also Riley v. State Farm Mutual Automobile Insurance Co.,* 420 F.2d 1372 (6th Cir.), *cert. denied,* 399 U.S. 928, 90 S.Ct. 2245, 26 L.Ed.2d 795 (1970); *Kirouac v. Healey,* 104 N.H. 157, 181 A.2d 634 (1962).

More specifically, judicial opinions dealing with statutory schemes like Maryland's have with virtual unanimity invalidated both types of "consent to sue" clauses in

---

6. For discussions of the background of these clauses, *see* J. Corbley, *Uninsured Motorist Protection* (Defense Research Institute, 1968), pp. 13-16, 44-48; A. Widiss, *Uninsured Motorist Coverage* (1969, 1981 Supp.), §§ 6.1-6.16, 7.4-7.11.

uninsured motorist endorsements. They have held that, if the insurer had notice of the tort suit and an opportunity to intervene but failed to seek intervention, then the insurer will be bound by the determination in the tort suit regarding the insured's entitlement to damages from the uninsured motorist and the amount of those damages. Furthermore, with regard to those judicial opinions which are not based upon uninsured motorist statutes similar to Maryland's, the overwhelming majority of cases nevertheless have held that the "consent to sue" clauses are against public policy and that an insurer, with notice and an opportunity to intervene, will be bound by the resolution of the issues in the tort suit. Cases holding that the insurer is bound by the determinations in the tort suit, and that the "consent to sue" clause is unenforceable, include, *e.g., Gulf American Fire & Casualty v. McNeal,* 115 Ga.App. 286, 154 S.E.2d 411, 417 (1967); *Vernon Fire and Casualty Ins. Co. v. Matney, supra,* 351 N.E.2d at 66; *Indiana Ins. Co. v. Noble, supra,* 265 N.E.2d at 432-436; *Mizer v. State Automobile & Casualty Underwriters, supra; Clayton v. Alliance Mutual Casualty Company,* 212 Kan. 640, 512 P.2d 507 (1973); *Winner v. Ratzlaff,* 211 Kan. 59, 65, 505 P.2d 606 (1973); *Wells v. Hartford Accident and Indemnity Company,* 459 S.W.2d 253, 259-260 (Mo. 1970); *Kisling v. MFA Mutual Insurance Company, supra,* 399 S.W.2d at 249; *State v. Craig, supra,* 364 S.W.2d at 346-348; *Dominici v. State Farm Mutual Ins. Co., supra,* 143 Mont. at 411-414; *Heisner v. Jones, supra,* 184 Neb. at 608-612; *State Farm Mutual Auto. Ins. Co. v. Christensen,* 88 Nev. 160, 494 P.2d 552 (1972); *Allstate Ins. Co. v. Pietrosh,* 85 Nev. 310, 454 P.2d 106 (1969); *Keel v. MFA Insurance Company,* 553 P.2d 153 (Okl. 1976); *Boughton v. Farmers Insurance Exchange,* 354 P.2d 1085 (Okl. 1960); *Childs v. Allstate Ins. Co.,* 237 S.C. 455, 463, 117 S.E.2d 867 (1961); *Glover v. Tennessee Farmers Mut. Ins. Co.,* 225 Tenn. 306, 468 S.W.2d 727, 730 (1971); *Finney v. Farmers Ins. Co.,* 21 Wash.App. 601, 586 P.2d 519, 529-531 (1978), *aff'd,* 92 Wash.2d 748, 600 P.2d 1272 (1979). *See also Christiansen v. Farmers Ins. Exchange,* 540 F.2d 472, 475-476 (10th Cir. 1976); *MFA Mutual Insurance Company*

*v. Lovins,* 248 F.Supp. 108 (E. D. Ark. 1965); *Levy v. American Automobile Insurance Co.,* 31 Ill.App.2d 157, 175 N.E.2d 607 (1961); *Barnhart v. Civil Service Employees Ins. Co.,* 16 Utah 2d 223, 398 P.2d 873 (1965).[7] The language of the standard uninsured motorist statute, the purpose underlying required uninsured motorist coverage, and the desirability of avoiding a multiplicity of suits, all support the soundness of the decisions throughout the country holding that "consent to sue" clauses are invalid and that insurers are generally bound by tort judgments against the uninsured motorists.[8]

In *Reese v. State Farm Mut. Auto. Ins., supra,* 285 Md. at 554, this Court pointed out that "[t]he provision of the

---

**7.** Only a few cases have upheld the validity of "consent to sue" clauses, and none of them have dealt with a statute like Maryland's. In California, a "consent to sue" clause was upheld because of a state statute expressly sanctioning such clauses. Travelers Indemnity Company v. Kowalski, 233 Cal.App.2d 607, 43 Cal.Rptr. 843 (1965); Mills v. Farmers Insurance Exchange, 231 Cal.App.2d 124, 41 Cal.Rptr. 650, 653 (1964). The Supreme Court of Arkansas held invalid, on public policy grounds, a clause voiding coverage if a tort suit against the uninsured motorist were prosecuted to judgment without the insurer's consent, but it upheld a clause requiring the insurer's consent to sue for the judgment in the tort case to be binding upon the insurer. It should be noted that this decision was before a tort and contract claim could be joined in a single action in Arkansas. MFA Mutual Ins. Co. v. Bradshaw, 245 Ark. 95, 431 S.W.2d 252 (1968). The Supreme Court of New Hampshire in Kirouac v. Healey, 104 N.H. 157, 181 A.2d 634 (1962), indicated that a "consent to sue" clause would be valid because arbitration was permitted by the New Hampshire statute. This also appears to be the view in Illinois after a statute was enacted sanctioning the arbitration clause, although in that State a "consent to sue" clause does not seem to be enforceable when the insurance company fails to furnish a valid reason for refusing to permit the insured to obtain a judgment against the uninsured motorist. Baron v. Coronet Insurance Company, 47 Ill.App.3d 95, 361 N.E.2d 799, 802; Andeen v. Country Mutual Ins. Co., 70 Ill.App.2d 357, 217 N.E.2d 814 (1966), *cert. denied,* 385 U.S. 1036, 87 S.Ct. 775, 17 L.Ed.2d 682 (1969). *See also* Poray v. Royal Glove Ins. Co., 90 N.J. Super. 454, 461-463, 217 A.2d 916 (1966).

**8.** It should be noted that the cases holding that "consent to sue" clauses are void and that insurers are bound by the judgments in the tort suits against uninsured motorists, have made no distinction between default judgments and other judgments in the tort actions. Many of these cases have involved default judgments. *See, e.g.,* Clayton v. Alliance Mutual Casualty Company, 212 Kan. 640, 512 P.2d 507, 509-511 (1973); State v. Craig, 364 S.W.2d 343 (Mo. App. 1973); Dominici v. State Farm Mutual Ins. Co., 143 Mont. 406, 409, 390 P.2d 806 (1964); Heisner v. Jones, 184 Neb. 602, 604, 169 N.W.2d 606 (1969). *See also* Finney v. Farmers Ins. Co., 21 Wash.App. 601, 586 P.2d 519, 530 (1978), *aff'd,* 92 Wash.2d 748, 600 P.2d 1272 (1979).

Maryland statute specifying the basic coverage of the uninsured motorist endorsement is standard language, similar to the language in statutes . . . that have been considered by courts throughout the country." This statute, in unambiguous language, provides that "every policy of motor vehicle liability insurance . . . *shall* contain coverage . . . for damages which the insured *is entitled to recover* from the owner or operator of an uninsured motor vehicle. . . ." Art. 48A, § 541 (c) (emphasis added). If an insured has obtained a valid judgment in a tort suit against the uninsured motorist, he clearly "is entitled to recover" those damages from the uninsured motorist. To allow an insurer to pay something *less* than the damages which the insured is entitled to recover against the uninsured motorist because of a policy clause requiring the insurer's consent to prosecute the tort suit against the uninsured, on its face cannot be squared with the statutorily mandated coverage. As the Indiana Court of Appeals observed with regard to language like that in the Maryland statute: "It is difficult to imagine that a judgment rendered by a court of competent jurisdiction would not legally entitle Matney [the insured] to recover the damages specified by that judgment." *Vernon Fire and Casualty Ins. Co. v. Matney, supra,* 351 N.E.2d at 66. Or, as the Supreme Court of Oklahoma, after holding void the consent to sue clause, stated (*Boughton v. Farmers Insurance Exchange, supra,* 354 P.2d at 1090-1091):

> "Exchange [the insurer] agreed to pay all sums plaintiff was legally entitled to recover as damages. The judgment against the uninsured motorist determined that plaintiff was entitled to recover from an uninsured motorist and established the amount she was entitled to recover. Exchange cannot now say . . . that it is entitled to relitigate these issues when it agreed to pay that which has already been determined. We therefore conclude the question of damages and legal liability of the uninsured motorist may not be relitigated in the present action and that the judgment against the uninsured motorist is conclusive of the issues

therein determined, subject, however, to any defenses Exchange might have against it."

To the same effect, *see, e.g., State Farm Mut. Auto. Ins. Co. v. Girtman,* 113 Ga.App. 54, 147 S.E.2d 364, 366 (1966); *Heisner v. Jones, supra,* 184 Neb. at 608; *Glover v. Tennessee Farmers Mut. Ins. Co., supra,* 468 S.W.2d at 729.

Our recent opinion in the *Reese* case emphasized the nature of an action by an insured against his insurer under the statutorily required uninsured motorist endorsement (285 Md. at 552-553):

"... this is neither a tort action nor an action by an asserted third party beneficiary of an insurance policy. Instead, this is a breach of contract action by the insured against his own insurer. Under the statutorily required coverage, the defendant has directly promised to pay the insured plaintiff under certain conditions. Because it is a promise by the insurer to pay its own insured, rather than a promise to its insured to pay some third party, the uninsured motorist coverage is in insurance parlance "first party coverage" like collision, comprehensive, medical payments or personal injury protection, and not "third party coverage" such as personal injury or property damage liability insurance. A suit based upon the insured's allegations that he is entitled to payment under one of the first party coverage clauses in the contract he entered into with his insurance carrier, and that the carrier has refused payment thereby breaching its promise, is clearly a contract action."

The Supreme Court of Montana pointed out in *Dominici v. State Farm Mutual Ins. Co., supra,* 143 Mont. at 411, that "'uninsured motorist insurance more closely resembles accident insurance restricted to a limited class of accident, than it does the type of insurance commonly regarded as indemnity insurance.'" Thus, under the statutorily required uninsured motorist coverage, the insured pays a premium in

return for the insurer's promise to pay if certain conditions are met. The statutory conditions do not require that the insured prove in an action against his insurer that the uninsured motorist was negligent, that the insured was free of negligence, and what the damages were. As pointed out in the *Reese* case, this is not a tort cause of action based on negligence. Instead, the condition is that the insured prove that he "is entitled to recover" damages in a specified amount from the uninsured motorist. If he already has a valid, final tort judgment against the uninsured motorist, he has met the statutory condition regardless of which party might be deemed to be negligent in a later contract action or what the "proper" damages might be ascertained to be in such contract action. Like other statutorily required first party coverages, if the premium was paid and the statutory conditions were met, the insurer is liable.

We stated in *Reese* that in light of the statutory language, the insured has different options for establishing that he "is entitled to recover" from the uninsured motorist. "He has the option of bringing a contract action against his insurer or a tort action against the uninsured motorist." 285 Md. at 554. Under MAIF's argument in the instant case, however, the insured would have no real option. If the "consent to sue" clause is valid, and if the insurer is not bound by the outcome in the tort case, the insurer can always require that the insured bring a contract action against the insurer in order to establish the tort liability of the uninsured motorist and the amount of tort damages. The insured would have no "option" to finally establish these tort issues in a tort suit against the uninsured motorist.

The language of the statute mandating coverage for damages which the insured "is entitled to recover" from the uninsured motorist, as well as the language stating that compulsory arbitration clauses to determine such entitlement are "prohibited and shall be of no legal force," lead to the conclusion that the "consent to sue" clause in the MAIF policy is void, and that MAIF is bound by the determinations in the tort suit regarding the uninsured motorist's liability and damages.

This conclusion is confirmed by the purpose underlying statutorily mandated uninsured motorist coverage. The courts have repeatedly stated that the purpose of uninsured motorist statutes is "that each insured under such coverage have available the full statutory minimum to exactly the same extent as would have been available had the tortfeasor complied with the minimum requirements of the financial responsibility Law." *Webb v. State Farm Mutual Automobile Ins. Co.,* 479 S.W.2d 148, 152 (Mo. App. 1972). Or, as stated by an Arizona court, the statutes reflect "a public policy that every insured is entitled to recover the damages he or she would have been able to recover if the uninsured motorist had maintained a policy of liability insurance in a solvent company." *Dairyland Insurance Company v. Lopez,* 22 Ariz.App. 309, 526 P.2d 1264, 1265 (1974). *See, e.g., Simpson v. Farmers Ins. Co.,* 225 Kan. 508, 592 P.2d 445, 447-448 (1979); *Burgo v. Illinois Farmers Insurance Company,* 8 Ill.App.3d 259, 290 N.E.2d 371, 373 (1972); *Glover v. Tennessee Farmers Mutual Insurance Co., supra,* 468 S.W.2d at 729; *Hawaiian Ins. & Guar. v. Mead,* 14 Wash.App. 43, 47, 538 P.2d 865 (1975) (statute embodies " 'the public policy that a claimant shall have the same rights in an uninsured motorist situation as he would have against a responsible third party.' "). Moreover, it is settled that "the remedial nature" of the uninsured motorist statute "dictates a liberal construction in order to effectuate its purpose of assuring recovery for innocent victims of motor vehicle accidents." *State Farm v. Md. Auto. Ins. Fund, supra,* 277 Md. at 605.

Turning to the present case, MAIF's position is flatly inconsistent with the purpose of placing the insured in the same position as he would have been if the tortfeasor had been insured, and inconsistent with the principle of liberal construction. If the tortfeasor Adams had been insured, the plaintiff Franz would have been able to recover the full tort judgment of $3,182.84 plus court costs. For MAIF to be able to disregard this judgment, even though it had notice of the tort suit and an opportunity to intervene, clearly defeats the

statutory purpose of placing Franz in the same posture as if Adams had been insured.

Finally, as the courts have generally recognized, considerations of judicial economy and the desirability of reducing litigation expenses militate against MAIF's position. Because an insurer "may be bound" by the judgment in the tort case, it has a right to intervene in the tort suit under both Maryland Rule 208 a (applicable to circuit court actions) and Maryland District Rule 208 a (applicable to District Court actions).[9] The right of an insurer to intervene in the tort suit under circumstances like those in the present case, and to defend against the insured's tort claim (regardless of whether the uninsured motorist is defending or not), is well recognized. *See, e.g., State Farm Mutual Automobile Ins. Co. v. Glover,* 113 Ga.App. 815, 149 S.E.2d 852, 856 (1966); *Vernon Fire and Casualty Ins. Co. v. Matney, supra,* 351 N.E.2d at 64-65; *Rawlins v. Stanley,* 207 Kan. 564, 486 P.2d 840, 842-844 (1971); *Wells v. Hartford Accident and Indemnity Company, supra,* 459 S.W.2d at 259-260; *State v. Craig, supra,* 364 S.W.2d at 346-349; *Dominici v. State Farm Mutual Ins. Co., supra,* 143 Mont. at 411; *Heisner v. Jones, supra,* 184 Neb. at 609; *Keel v. MFA Insurance Company, supra,* 553 P.2d at 157-159. If an insurer, with notice of the tort suit and an opportunity to intervene, declines to do so, and if the insurer is entitled to re-litigate the issues in a later contract action, there will be

---

**9.** Both rules are worded identically and provide as follows (emphasis added):

"Rule 208. Intervention

a. *Of Right.*

Upon timely application a person shall be permitted to intervene in an action: (a) when the representation of the applicant's interest by existing parties is or may be inadequate and the applicant *is or may be bound by a judgment in the action;* or (b) when the applicant is so situated as to be adversely affected by a distribution or other disposition of property which is in the custody or subject to the control or disposition of the court or an officer thereof.

"b. *Permissive.*

1. Person.

Upon timely application a person may be permitted to intervene in an action when his claim or defense has a question of law or fact in common with the action."

two separate court actions devoted to resolving the identical issues of tort liability and damages. A second unnecessary lawsuit represents neither a proper utilization of judicial resources nor a sound use of premium dollars. As was pointed out in *Indiana Insurance Company v. Noble, supra,* 265 N.E.2d at 434:

> ". . . there is no good reason to put the burden on the insured to relitigate the same issues in a second suit against the insurance company. It is sound legal policy to avoid multiplicity of suits and resolve disputes in one case where possible."

*See also State v. Craig, supra,* 364 S.W.2d at 347; *Heisner v. Jones, supra,* 184 Neb. at 608-609; *Keel v. MFA Insurance Company, supra,* 553 P.2d at 158.

In defending the "consent to sue" clause, MAIF makes essentially three arguments: (1) the clause protects the insurance carrier from "collusive judgments" in the tort case; (2) requiring the insurer to intervene in the tort case may result in a conflict of interest; (3) the insurer may have policy defenses unrelated to the issues in the tort case, and these issues will in any event require a second lawsuit. Even if these arguments were highly persuasive, they would not justify our ignoring the plain language of the uninsured motorist statute. Moreover, we agree with the courts in our sister states that these arguments are not very persuasive.

(1) Since, under the uninsured motorist statute and our intervention rules, the insurance carrier has a right to intervene in the tort action and to assert against the plaintiff insured any defenses which it has relating to tort liability or damages, regardless of whether the uninsured motorist raises such defenses or defends at all, the occurrence of "collusive judgments" is unlikely. The insurer, in oral argument before us, pointed to the possibility that the insured and the uninsured motorist would settle the tort suit, thereby depriving the insurance company of the right to assert defenses. However, the insurer can easily protect itself from being bound by such settlement. The standard uninsured motorist endorsement, and the endorsement in

the instant case, requires the insurer's consent to any settlement with the uninsured motorist. Unlike "consent to sue" clauses, "consent to settle" clauses are generally upheld, at least to the extent that settlements, consent judgments, releases, covenants not to sue, etc. between insureds and the uninsured motorists are not binding upon insurers unless the insurers have given their consent. *Dancy v. State Farm Mutual Automobile Insurance Co.*, 324 F.Supp. 964 (S.D. Ala. 1971); *State Farm Fire and Casualty Company v. Rossini*, 107 Ariz. 561, 490 P.2d 567 (1971); *McInnis v. State Farm Mutual Automobile Ins. Co.*, 208 So.2d 481 (Fla. App. 1968); *Tuthill v. State Farm Insurance Company*, 19 Ill.App.3d 491, 311 N.E.2d 770 (1974); *Benson v. Farmers Ins. Co., Inc.*, 227 Kan. 833, 610 P.2d 605 (1980); *Gauthreaux v. Travelers Ins. Co.*, 348 So.2d 737, 739 (La. App. 1977); *Aetna Cas. & Sur. Co. v. Poirier*, 371 Mass. 257, 356 N.E.2d 452 (1976); *U.S. Fidelity & Guaranty Co. v. Hillman*, 367 So.2d 914 (Miss. 1979); *Kisling v. MFA Mutual Insurance Company, supra*, 399 S.W.2d at 250-251; *Worobec v. State Farm Mut. Auto. Ins. Co.*, 200 Neb. 210, 263 N.W.2d 95 (1978); *Charest v. Union Mutual Ins. Co. of Providence*, 113 N.H. 683, 313 A.2d 407 (1973); *Stanko v. Hartford Acc. & Indem. Co.*, 397 A.2d 1325 (R.I. 1979); *Ford v. State Farm Mut. Auto. Ins. Co.*, 550 S.W.2d 663 (Tex. 1977).[10]

(2) We agree with the insurance company that a conflict of interest may arise because of the uninsured motorist coverage. Thus, in defending against its insured in the tort action, the insurer might seek to establish that the insured was contributorily negligent and/or that the uninsured

---

**10.** Most of those cases which have refused to enforce "consent to settle" clauses have done so in the context of settlements with a party other than the uninsured motorist. Alabama Farm Bureau Mut. Cas. Ins. Co. v. Clem, 49 Ala.App. 457, 273 So.2d 218 (1973); Dairyland Insurance Company v. Lopez, 22 Ariz.App. 309, 526 P.2d 1264 (1974); Herbert v. Green, 311 So.2d 223 (La. 1975); Westcott v. Allstate Ins., 397 A.2d 156, 167-168 (Me. 1979); Harthcock v. State Farm Mutual Automobile Ins. Co., 248 So.2d 456, 459-460 (Miss. 1971); Craig v. Iowa Kemper Mut. Ins. Co., 565 S.W.2d 716, 725-726 (Mo. App. 1978); Government Employees Ins. Co. v. Shara, 137 N.J. Super 142, 147-149, 348 A.2d 212 (1975); Hawaiian Ins. & Guar. v. Mead, 14 Wash.App. 43, 47-50, 538 P.2d 865 (1975). But *cf.*, Gulf American Fire Casualty Co. v. McNeal, 115 Ga.App. 286, 154 S.E.2d 411, 417 (1967); Rhault v. Tsagarakos, 361 F.Supp. 202 (D.Vt. 1973).

motorist was free of negligence. On the other hand, if the uninsured motorist has or may have a claim against the insured, the insurer has a duty of defending its insured under the liability provisions of the policy and, in that connection, might want to show exactly the opposite, *i.e.*, that the insured was not negligent and/or that the uninsured motorist was negligent. However, the potential for a conflict of interest does not arise simply because the "consent to sue" clause is invalid. Rather, the potential for such conflict is inherent in uninsured motorist coverage. *See* the discussion in *Vernon Fire and Casualty Ins. Co. v. Matney, supra,* 351 N.E.2d at 65. Furthermore, the danger of conflict exists in other insurance situations, such as when the plaintiff and defendant in a tort case have the same liability insurer, or when the plaintiff in a tort case presents claims against the insured which are both within and without the policy coverage. *See, e.g., Brohawn v. Transamerica Ins. Co.,* 276 Md. 396, 409, 347 A.2d 842 (1975). Such conflicts, if they occur, are resolved by having the insurer provide an independent attorney to defend the insured against any liability claims. *Brohawn, supra,* 276 Md. at 411-413, and cases there cited. The Supreme Court of Nebraska, after holding that the "consent to sue clause" in an uninsured motorist endorsement was void and that the insurer, having had notice and an opportunity to intervene, was bound by a default judgment in the tort case, stated with regard to the conflict point (*Heisner v. Jones, supra,* 184 Neb. at 611):

> "To give the uninsured motorist's carrier the right to intervene is to give assurance that it may litigate the issues and at the same time avoid the multiplicity of suits and the harassment of the insured by the necessity to litigate his rights twice. The terms of his contract and the uninsured motorist's statutes imply that they need to be litigated only once. . . . It is true that this may place the carrier in an inconvenient position with respect to the issues of negligence and contributory negligence. We see no difference between this situation and the common situation where the carrier has

coverage on two insureds involved in the same accident. Beyond that the carrier receives a separate premium for a policy which on its face requires it to be placed in an ambivalent or inconsistent position and it therefore calculatedly assumes the inconveniences that may arise from that situation."

(3) The final point made in argument before us is that an insurer may have policy defenses unrelated to the issues in the tort suit against the uninsured motorist, and that, therefore, a second contract suit against the insurer may be necessary in any event. The short answer to this contention is that, under the insurance company's position, two lawsuits are going to be required in every case when the uninsured motorist seeks to enforce his legal right to obtain a judgment against the uninsured tortfeasor and the insurer will not consent to the prosecution of the suit. However, if the insurer having notice of the tort suit is bound by the outcome of that litigation, a second suit will ordinarily be required only in those relatively few instances when the insurer has contractual defenses unrelated to the tort issues. Moreover, in many of these instances, the contractual matters could be litigated in the underlying tort suit. Under Rule 313, contract and tort claims may be joined in a single action. *Bogley v. Middleton Tavern,* 288 Md. 645, 647-648, 421 A.2d 571 (1980); *Harkins v. August,* 251 Md. 108, 110, 246 A.2d 268 (1968); *Osborn v. Swetnam,* 221 Md. 216, 220, 156 A.2d 654 (1959). Furthermore, when an initial claim is in tort, a counterclaim, cross-claim or third-party claim may be in contract, and vice versa. *See, Allen & Whalen v. Grimberg Co.,* 229 Md. 585, 586-587, 185 A.2d 337 (1962). Thus, if the insurer intervenes in the underlying tort case, the plaintiff insured could amend his declaration and add a contract claim against the insurer grounded upon the uninsured motorist endorsement. Moreover, in a circuit court action, if an insured plaintiff fails to assert a contract claim against the insurer under the endorsement, but if an actual controversy concerning coverage exists apart from the "tort" issues, the insurer could make a claim against

the plaintiff under the Declaratory Judgment Act, Code (1974, 1980 Repl. Vol.), §§ 3-401, et seq., of the Courts and Judicial Proceedings Article. *Cf., Master v. Master,* 223 Md. 618, 626, 166 A.2d 251 (1960).

For the reasons discussed above, we hold that MAIF, having had notice of the tort action against the uninsured motorist and ample opportunity to intervene, was bound by the judgment in the tort suit.[11]

## II. Nationwide Mutual Insurance Co. v. Webb

William Jackson Webb, a resident of Salisbury, Maryland, was driving his 1970 Chevrolet automobile in the City of Salisbury on October 13, 1977, when, at an intersection controlled by a traffic light, his vehicle collided with an automobile driven by Arthur Brownell Jones. According to Webb, he was properly proceeding through the intersection on a green light and the accident was caused by Jones's negligence in failing to stop for a red light.

---

11. Although not relied upon by the Court of Special Appeals or the respondent, it should be noted that there may be a wholly separate ground in this case for holding that MAIF is bound by the tort judgment. As indicated earlier, MAIF in this case flatly denied liability before the tort action was prosecuted. Even in those few jurisdictions in which "consent to sue" clauses are upheld, or those jurisdictions in which courts have not yet ruled upon the validity of "consent to sue" clauses, it is uniformly held that if the insurer disclaims liability under the uninsured motorist endorsement before the insured prosecutes to judgment or settles a suit against the uninsured tortfeasor, the insurer thereby waives the consent clauses and the insured is relieved of any duty to comply with the consent clauses. Under these circumstances, the insured may, without the insurer's consent, prosecute to judgment or settle the case against the uninsured tortfeasor, and the insurer will be bound by that judgment as to the issues of tort liability and damages. The insurer's denial of liability is deemed "inconsistent with claiming the right under the policy to consent," Ford v. State Farm Mut. Auto. Ins. Co., 550 S.W.2d 663, 666 (Tex. 1977). *Accord:* Stephens v. State Farm Mutual Automobile Ins. Co., 508 F.2d 1363, 1366 (5th Cir. 1975); Employers National Insurance Company v. Parker, 286 Ala. 42, 236 So.2d 699, 702-704 (1970); Calhoun v. State Farm Mutual Automobile Ins. Co., 254 Cal.App.2d 407, 62 Cal.Rptr. 177, 180-181 (1967); Gay v. Preferred Risk Mut. Ins. Co., 114 N.H. 11, 17-18, 314 A.2d 644 (1974); Matter of Vanguard Ins. Co., 18 N.Y.2d 376, 381-382, 275 N.Y.S.2d 515, 222 N.E.2d 383 (1966); Pickering v. American Empl. Ins. Co., 109 R.I. 143, 157, 282 A.2d 584 (1971); *See also* Christiansen v. Farmers Ins. Exchange, *supra,* 540 F.2d at 476; American Southern Insurance Company v. Daniel, 198 So.2d 850, 853 (Fla. App. 1967); Finney v. Farmers Ins. Co., 21 Wash.App. 601, 586 P.2d 519, 531 (1978), *aff'd,* 92 Wash.2d 748, 600 P.2d 1272 (1979).

At the time of the accident, Webb's automobile was insured under a policy which had been issued by Nationwide Mutual Insurance Company on October 29, 1976. The sheet of the policy listing the "Schedule Of Coverages" disclosed that there was uninsured motorist coverage for bodily injuries limited to $20,000.00 for a single injury and $40,000.00 for an accident, and for property damage limited to $5,000.00. Shortly after the accident, Webb notified Nationwide that he "might have a claim under the uninsured motorist's provision" of his policy. Nationwide, on April 7, 1978, wrote to Webb stating that "we must deny your uninsured motorist claim.... After talking with all parties involved in this accident we are still unable to prove who was the negligent party."

Meanwhile, on April 3, 1978, Webb, by his attorney, filed a tort action in the Circuit Court for Wicomico County against Jones. By letter dated July 31, 1978, Jones's attorney notified Webb's attorney that Jones "had no insurance on his vehicle at the time of the accident." Consequently, on August 23, 1978, Webb's attorney notified Nationwide that Jones was an uninsured motorist, that Webb had filed suit against him in the Circuit Court for Wicomico County and that the matter was awaiting trial assignment. Nationwide was also informed of the case number and the name and address of Jones's attorney. Upon receipt of this information on August 24, 1978, Nationwide did nothing. About four months later, the tort suit was tried and judgment was entered in favor of Webb for $16,591.77 plus costs. Webb notified Nationwide of the judgment and requested payment. However, the insurer again denied the claim.

The instant case was commenced when Webb filed a contract action against Nationwide in the Circuit Court for Wicomico County, seeking the amount of the tort judgment ($16,591.77 plus costs) under the uninsured motorist coverage of his policy. Webb then filed a motion for summary judgment, on the theory that the insurer, having been notified of the tort action and having elected not to participate, was bound by the outcome of the tort suit with regard to the liability of the uninsured motorist to Webb and the

amount of damages. Nationwide answered by asserting certain contract defenses and filed its own motion for summary judgment. The principal defense was set forth as follows in Nationwide's answer:

> "3. The uninsured motorist coverage sued upon in this cause of action is found in Form 576B, and entitled 'Family Protection Coverage.' A true copy of the same has been attached to the Plaintiff's Motion for the Production of Written Instruments.
>
> "Under the Insuring Agreement, I, entitled Damages for Bodily Injury caused by uninsured automobiles, it is specifically provided:
>
> No judgment against any person or organization alleged to be legally responsible for the bodily injury shall be conclusive, as between the insured and the company, of the issues of liability of such person or organization or of the amount of damages to which the insured is legally entitled unless such judgment is entered pursuant to an action prosecuted by the insured with the written consent of the company.
>
> "No where in the record of this case is there any evidence that the insured Plaintiff secured the written consent of the Defendant prior to prosecuting Civil Case 9496 in the Circuit Court for Wicomico County."

The other defense which Nationwide raised and has continued to rely upon, was that paragraph 5 of the "Conditions" section of endorsement number 576B, required the insured, in addition to giving the insurer notice of the tort suit against the uninsured motorist, to forward to the insurer "a copy of the summons and complaint or other process served in connection with such legal action ...." Nationwide claimed that this condition was breached and that it was, therefore, excused from liability under endorsement 576B.

At the hearing on the motion for summary judgment, the only ground on which Nationwide relied for having denied Webb's uninsured motorist "claim" up until the time of the tort suit, was that it did not know whether the uninsured motorist Jones was liable to Webb and it did not know the amount of damages. It argued that because it had not consented to the prosecution of the tort action, the outcome of that action was "basically a meaningless judgment as far as we are concerned." Nationwide also relied on the insured's failure, after the tort suit was instituted, to forward copies of the suit papers. At the conclusion of the hearing, the court refused to enforce the "consent to sue" clause. With respect to condition 5 of the endorsement, relating to notice of the tort action, the circuit court found "that the notice to them of August the 23rd, while not in strict compliance, is in substantial compliance and satisfies the obvious purpose of the requirements. The Company had an opportunity to do whatever it wanted to defend it [the tort action]." The circuit court granted Webb's motion for summary judgment.

Nationwide appealed, and the Court of Special Appeals decided the matter in the same opinion which resolved *Maryland Automobile Insurance Fund v. Franz.* As in the *Franz* case, the intermediate appellate court held that the "consent to sue" clause in an uninsured motorist endorsement was void. The appellate court held that Webb was entitled to summary judgment unless Nationwide suffered prejudice by not being notified of the tort suit until August 23, 1978, and not being sent copies of the suit papers, 44 Md.App. at 558. Although pointing out that "[t]here has been no allegation by the insurer that noncompliance with the condition and the delayed notification prejudiced Nationwide from having a reasonable opportunity to protect its interest by intervention," the Court of Special Appeals nevertheless remanded the case under Maryland Rule 1071 "to provide the insurer an opportunity to move to set aside the summary judgment if it can by affidavit or evidence convince the [circuit] court that a question of fact regarding such prejudice exists." *Id.* at 558-559.

Nationwide then filed a petition for a writ of certiorari in this Court, broadly challenging the opinion and judgment of the Court of Special Appeals. In the first "question presented," Nationwide asserted that the uninsured motorist endorsement upon which it relied "support[s] . . . its contention that it is not bound by the outcome of the tort case between its insured and the uninsured motorist" and that the provisions of the endorsement "do not diminish or reduce the insured's coverage . . . ." Three other "questions presented" in the certiorari petition set forth specific arguments by the insurer similar to those dealt with in Part I of this opinion. We granted the petition and consolidated the case with *Maryland Automobile Insurance Fund v. Franz.*

If this case actually presented the same issues as *Franz,* what was said in Part I of this opinion would be dispositive. However, those issues cannot logically be reached in this case. The factual basis for Nationwide's position throughout this litigation, and the express premise of the first "question" in the certiorari petition, was that the uninsured motorist endorsement contained in Mr. Webb's policy was applicable, and that, under the terms of that endorsement, Nationwide was not bound by the outcome of the tort suit because it did not consent and because it did not receive the suit papers. However, the endorsement relied upon by Nationwide has no application to the controversy in this case.

The uninsured motorist endorsement invoked by Nationwide in its answer and in its motion for summary judgment, and the endorsement included in its record extract in the Court of Special Appeals and in this Court, was endorsement number 576B. This is also the only uninsured motorist endorsement contained in Mr. Webb's insurance policy, which is also included in the record. No other uninsured motorist endorsement is contained in the record, or has been referred to throughout this litigation. The "consent to sue" and other policy provisions relied on by Nationwide are all found in endorsement number 576B. Endorsement number 576B, under "exclusions," provides as follows:

"This endorsement does not apply:

\* \* \*

    (d) to any accident occurring in the state of Maryland if the Named Insured resides in the state of Maryland . . . ."

Later in the endorsement, after the specification of liability limits of $10,000 for each person and $20,000 for each accident, the endorsement contains the following provisions (underlining in original):

"This endorsement adds protection for you against bodily injury losses caused by uninsured motorists or hit-and-run drivers — when such accidents occur \*outside the State of Maryland."

\* \* \*

"\*The Maryland Unsatisfied Judgment Fund, a similar protection, covers you within the State of Maryland."

Because the named insured is a Maryland Resident, and because the accident in this case occurred within the State of Maryland, it is obvious that endorsement number 576B has no application to the present controversy.

Consequently, Nationwide cannot prevail because of the threshold issue contained in the first question presented in its certiorari petition. There are in this case no policy clauses supporting Nationwide's position. The entire foundation for Nationwide's contention that it is not bound by the tort judgment are two clauses in endorsement number 576B: (1) the consent to sue clause; (2) the requirement that the insured forward to the insurer the pleadings in the tort action. Since these clauses have no application to this accident, Nationwide's contention must be rejected.

The basis for the remand by the Court of Special Appeals was the clause in endorsement number 576B requiring that the insured give notice of the tort action and forward the pleadings. The asserted violation of this clause was the failure to forward the suit papers. The intermediate

appellate court, exercising its discretion under Rule 1071, gave Nationwide an opportunity to show that it was prejudiced by the violation of the clause. In light of the discovery that this clause has no application to the present controversy, we shall remand the case in order to give the Court of Special Appeals an opportunity to reconsider its exercise of discretion under Rule 1071.[12]

> *In Maryland Automobile Insurance Fund v. Franz, judgment of the Court of Special Appeals affirmed. Petitioner to pay costs.*
> *In Nationwide Mutual Insurance Company v. Webb, judgment of the Court of Special Appeals vacated, and case remanded to that court for further proceedings in accordance with this opinion. Petitioner to pay costs.*

---

**12.** In this connection, it should be noted that, although no pertinent policy clause in this case required notice to the insurer of the tort action, considerations of due process do require such notice in order for an insurer to be bound by the outcome of the tort action. *See* State Farm Mutual Automobile Ins. Co. v. Glover, 113 Ga.App. 815, 149 S.E.2d 852, 856 (1966); Vernon Fire and Casualty Ins. Co. v. Matney, 170 Ind.App. 45, 351 N.E.2d 60, 66 (1976). *See also* Wells v. Hartford Accident and Indemnity Company, 459 S.W.2d 253, 259 (Mo. 1970). We are aware of no authority, however, supporting the position that the pleadings in the tort case must be forwarded to the insurer.

Even when the uninsured motorist endorsement specifically requires notice, it has been held that the requirement does "not become operative until an insured reasonably believes he has an uninsured motorist claim." Finney v. Farmers Ins. Co., *supra*, 586 P.2d at 524. In the instant case, the insured's attorney was informed by letter dated July 31, 1978, that Mr. Jones was uninsured, and he sent notice to Nationwide a few weeks later, on August 23, 1978. This was four months before the trial of the tort case. It would certainly seem that such notice was sufficient to meet due process requirements.